IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO


LEONARD GARCIA,

       Plaintiff,

vs.                                                                             No. 05-CV-0143 JC/ACT

CHUGACH MANAGEMENT SERVICES, INC.,
and BOB ZULICK,

       Defendants.


## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on *Defendants' Motion for Summary Judgment and Memorandum in Support* ("Motion"), filed October 31, 2005 (*Doc. 22*). Having considered the Motion, the parties' submissions, all relevant authority, and being otherwise fully advised, the Court finds the Motion well-taken and it is, therefore, granted.

**I.**     **Factual/Procedural Background**

The following facts are either undisputed, deemed admitted[1], or viewed in the light most favorable to Plaintiff as non-moving party. Plaintiff is an Hispanic male who was employed by

---

[1] Plaintiff's opposition to Defendants' Motion fails the requirements of Local Rule 56.1, which states that "[a] memorandum in opposition to the [summary judgment] motion must contain a concise statement of the material facts as to which the party contends a genuine issue does exist. Each fact in dispute must be numbered, must refer with particularity to those portions of the record upon which the opposing party relies, and must state the number of the movant's fact that is disputed. All material facts set forth in the statement of the movant will be deemed admitted unless specifically controverted." D.N.M. LR-Civ. 56.1(b). Accordingly, all facts not properly disputed are deemed admitted.

Defendant Chugach Management Services at its Kirkland Air Force Base site from some time in 2000 until he tendered his resignation on June 3, 2004. Plaintiff was promoted by Project Manager Von Christiansen to the position of Assistant Operations Manager on February 11, 2004. Defendant Bob Zulick, Deputy Project Manager, was one of Plaintiff's supervisors.

During the week of May 3, 2004, Leroy Pacheco, a warehouse clerk at Chugach, reported that six company-owned smoke detectors were missing from the supply warehouse. Subsequently, Plaintiff made it known that the missing smoke detectors were in his office. Plaintiff explained that he had removed the detectors from the warehouse in response to an after-hours call from a female sergeant in a base facility who indicated that the smoke detectors might be needed. According to Plaintiff, this female informed Plaintiff that a high-ranking visitor ("VP") might be visiting the base and the smoke detectors in the Visiting Officers' Quarters ("VOQs") might need replacing. Plaintiff testified that he did not take the caller's phone number and had no way to call her back. The female caller has never been located or identified, despite Defendants' efforts to do so. Plaintiff testified that the call prompting him to take the smoke detectors from the warehouse came "in the time frame" of within a day or two of May 14, 2004. Plaintiff said that he did not complete the required paperwork to properly sign out the smoke detectors because he was tired and he thought he would do it the next morning. The missing smoke detectors were not compatible with the fire alarm system in the VOQs.

When returning the smoke detectors from Plaintiff's office to stock, warehouse employee Daniel Santiago noticed that the handwritten, company-issued inventory numbers on the boxes were inconsistent with the customary warehouse markings and that the handwriting itself appeared unfamiliar. Santiago further noticed that the manufacturer-issued serial number on the original

[missing] smoke detectors differed from the serial number on those retrieved from Plaintiff's office. Warehouse Supervisor Mark Berg inquired about the discrepancy and was informed by a Home Depot representative that the original serial number had been discontinued by the manufacturer and the new number reflected its replacement.

Zulick investigated the incident. Zulick then turned the information he gathered, along with his impressions, over to Christiansen. Christiansen reviewed the information before him and ultimately concluded that Plaintiff's story about the smoke detectors lacked credibility. Christiansen determined that Plaintiff misappropriated company property and was dishonest when questioned about it.

At some point during the review process, Christiansen informed Plaintiff that he could be terminated as a result of the incident, but that he would first be given the opportunity to resign. On June 3, 2004, Christiansen met with Plaintiff and told him that unless he resigned he would be terminated. At that meeting, Plaintiff tendered a pre-composed, two-page resignation letter that reads much like a civil complaint. *See* Mot., Ex. L.

On November 24, 2004, Plaintiff filed his Complaint in the Second Judicial District, County of Bernalillo, State of New Mexico, claiming Constructive Discharge (Count One), Breach of Implied Employment Contract (Count Two), and seeking review of the dismissal of his discrimination claims under the New Mexico Human Rights Act. On February 9, 2005, Defendants removed the case to this Court, invoking federal jurisdiction pursuant to 28 U.S.C. §§1332, 1441(a) and 1446.

**II.**   **Legal Standard**

A party is entitled to summary judgment on all or any part of a claim as to which there is no genuine issue of material fact and as to which the moving party is entitled to judgment as a matter of

law. Fed.R.Civ.P. 56(c). *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). For purposes of a summary judgment motion, the evidence is viewed in the light most favorable to the non-moving party. *Id*. The moving party has the initial burden of showing that there is no genuine issue of material fact. *Id.* at 256. The movant may discharge this burden by pointing out the absence of evidence to support one or more essential elements of the non-moving party's claim, as "a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323-25 (1986).

Once the moving party has carried its burden under Rule 56(c), the non-moving party must do more than merely show that there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The party opposing the motion may not rest on mere allegations or denials of pleading, but must set forth specific facts showing a genuine issue for trial. *Anderson,* 477 U.S. at 248, 256. To meet this burden, the non-movant must specify evidence in the record and demonstrate the precise manner in which that evidence supports its claims. *Gross v. Burggraf*, 53 F.3d 1531, 1546 (10th Cir. 1995). Unsupported allegations, conclusory in nature, are insufficient to defeat a proper motion for summary judgment. *Id.* If the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. *Matsushita*, 475 U.S. at 597.

**III.    Discussion**

      A.    Count I: Constructive Discharge

Plaintiff, through counsel, erroneously pled constructive discharge as an independent cause of action in Count One. As Defendants correctly point out, however, constructive discharge is not a cause of action in and of itself. *See, e.g., Gormley v. Coca-Cola Enters.*, 109 P.3d 280, 282 (N.M.

2005) ("[c]onstructive Discharge is not an independent cause of action, such as tort or breach of contract."). It is, instead, the legal equivalent of a discharge and is available to assist a plaintiff in establishing, for example, a prima facie case where adverse employment action or termination is a required showing but plaintiff has resigned. Thus, while competent summary judgment evidence supporting Plaintiff's theory of constructive discharge is necessary to sustain Plaintiff's claims of breach of contract in Count Two and discrimination in Count Three, Count One is properly dismissed.

>    B.    Count II:  Breach of Implied Contract

First, the Court summarily dismisses the cause of action sounding in contract against Mr. Zulick, for it is beyond reasonable dispute that Mr. Zulick was not a party to any employment contract with Plaintiff. A person cannot breach a contract to which he is not a party. UJI 13-822 NMRA.

In New Mexico, an employment contract rests for an indefinite period and is terminable at the will of either party unless there is an express contract provision stating otherwise. *Garcia v. Middle Rio Grande*, 918 P.2d 7, 10 (N.M. 1996) (citing *Hartbarger v. Frank Paxton Co.*, 115 N. M. 665, 668 (1993)). New Mexico courts have recognized two additional exceptions to the general rule of at-will employment: (1) wrongful discharge in violation of public policy (retaliatory discharge) and (2) an implied contract term that restricts the employer's power to discharge. *Garcia*, 918 P.2d at 10. Here, it is an implied contract in the form of the Employee Manual that Plaintiff contends altered the at-will doctrine.

Before a written personnel policy will be elevated to the status of a contract, there must be a reasonable expectation that it was intended to be such. *Garrity v. Overland Sheepskin Co.*, 917 P.2d 1382, 1385 (N.M.1996). Plaintiff signed a statement, or disclaimer, acknowledging that his

5

employment was terminable at the will of either party and that "no contract of employment other than 'at will' has been expressed or implied." Mot., Ex. T. Plaintiff argues the disclaimer is invalid under *McGinnis v. Honeywell, Inc.*, 791 P.2d 452 (N.M.1990) and *Mealand v. E. N. M. Med. Ctr.*, 33 P.3d 285 (N.M. 2001). Finding both cases distinguishable, the Court determines that pursuant to the law established in *Garrity* as applied to the facts of this case, Plaintiff had no reasonable expectation that the Employee Manual was intended to be a contract.

Even if there was an implied-in-fact contract requiring good cause for termination, such good cause has been shown. The Employee Manual allows the company to proceed to immediate termination without engaging in progressive discipline, "where the Company determines that immediate dismissal is appropriate." Mot., Ex. U at p. 26. Thus, Plaintiff's denial of serious wrongdoing is immaterial and creates no genuine issue for trial on breach, for it is the company's determination alone that governs the type of discipline to be administered.

C.     Discrimination

Plaintiff alleges Defendants violated his rights pursuant to the New Mexico Human Rights Act (NMHRA). NMSA 1978, § 28-1-7[2]. The NMHRA makes it unlawful for an employer to discriminate against an employee based on race or national origin. New Mexico courts look to decisions interpreting Title VII of the Civil Rights Act and apply the same analysis to claims under the NMHRA. *See Perry v. Woodward*, 199 F.3d 1126 (10th Cir. 1999). Plaintiff's general contention is that "Defendant Zulick enforced Chugach's personnel policies and procedures when

---

[2]Plaintiff states for the first time in *Plaintiff's Memorandum in Opposition to Defendants' Motion in Limine to Exclude Evidence of Racial Slur*, filed November 16, 2005 (*Doc. 28*), "[t]his is a Title VII case, alleging disparate treatment...." Plaintiff mischaracterizes his own pleadings, for he asserted discrimination claims under the NMHRA alone. *See* Compl. at 5-6. In fact, there is no federal question in this matter; the Court's jurisdiction is based solely on diversity.

addressing personnel concerns with non-Hispanic employees and managers, but did not do [sic] when addressing Plaintiff." In this way, Plaintiff believes he was the victim of disparate treatment based on his Hispanic ethnicity.

First, Plaintiff's discrimination claim against Defendant Zulick is properly dismissed because Plaintiff failed to exhaust his remedies under the NMHRA with regard to Zulick, who was not named in his administrative charge. *See* Mot., Exs. Q, R. Individual liability under the NMHRA is feasible, but not without exhaustion. *Sonntag v. Shaw*, 2001-NMSC-015, ¶ 13, 22 P.3d 1188; *cf Gachupin v. Sandoval County*, No. CIV 04-1216 JC/WDS (D.N.M.. Sept. 20, 2005) (inaccurately labeling individual claims under NMHRA as "invalid" when dismissing claims pursuant to the parties' stipulation).

The familiar three-stage *McDonnell-Douglas* burden-shifting analysis applies to claims of discrimination where, as here, no direct evidence of discrimination exists. *See Bullington v. United Air Lines, Inc.*, 186 F.3d 1201, 1315-16 (10th Cir. 1999); *Smith v. FDC Corp.*, 787 P. 2d 433, 436 (N.M.1990). Under this framework, a plaintiff is first required to make a prima facie case and the burden then shifts to the defendant to demonstrate a legitimate, non-discriminatory reason for its action. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Once the defendant has proffered a legitimate justification, the burden shifts back to the plaintiff to demonstrate that defendant's proffered reason is mere pretext for intentional discrimination. *Id.* at 804.

In order to make a prima facie showing of discrimination based on race, Plaintiff must establish that (1) he belongs to a protected class; (2) he was qualified for his position; (3) despite his qualifications, he was discharged; and (4) his position was not eliminated after his discharge. *English v. Colo. Dept. of Corr.*, 248 F.3d 1002, 1008 (10th Cir. 2001). Plaintiff satisfies the first two prongs,

as he is of Hispanic ethnicity and was qualified for his position as illustrated by numerous awards in recognition of his excellent job performance.

Regarding prong three, the Court must determine whether Plaintiff's resignation constitutes a constructive discharge. "[C]onstructive discharge is a doctrine that permits an employee to recast a resignation as de facto firing, depending on the circumstances surrounding the employment relationship and the employee's departure." *Gormley v. Coca Cola Enters.,* 109 P.3d at 282. A choice between firing and resignation does not alone establish constructive discharge. *Parker v. Bd. of Regents*, 981 F.2d 1159, 1162 (10th Cir. 1992) (discussing factors for courts to consider, namely (1) whether employee understood the nature of his choice; (2) whether employee was given an alternative to resignation; (3) whether the employee had a reasonable time in which to decide; and (4) whether employee was permitted to select the resignation date.) The key is whether the employee's choice was voluntary, notwithstanding the inherently unpleasant nature of making a choice between quitting and being terminated. *See Lighton v. Univ. of Utah*, 209 F.3d 1213, 1222-23 (10th Cir. 2000).

Here, Plaintiff's opportunity to deliberate over his choice is best evidenced by the detailed, typewritten letter of resignation he prepared in advance of the June 3 meeting with Mr. Christiansen. Plaintiff's wife, an Operations Manager at the New Mexico Department of Labor, accompanied Plaintiff to the June 3 meeting and reviewed the letter before he tendered it. Application of these facts to the *Parker* factors shows that Plaintiff's choice to resign, though undoubtedly unpleasant, was indeed voluntary. Therefore, Plaintiff has failed to make a prima facie case of discrimination.

Even if Plaintiff could establish a prima facie case, Defendants' legitimate justification for the termination is their belief, based on the investigation, that Plaintiff stole or misappropriated company

property, lied about it, and was therefore no longer trustworthy. Plaintiff erroneously contends that his denial of wrongdoing in the face of Defendants' belief to the contrary creates a genuine issue of fact. As Defendants readily point out, however, an employer's reasonable or rational belief that an employee has engaged in misconduct is all that matters, even if the belief is mistaken[3]. *Rivera v. City and County of Denver*, 365 F.3d 912, 924-25 (10th Cir. 2004); *Tesh v. U.S. Postal Serv.*, 349 F.3d 1270, 1273 (10th Cir. 2003). Given the evidence in this case, the Court determines that Defendants' belief that Plaintiff engaged in misconduct was reasonable and rational. Thus, the burden shifts back to Plaintiff to show pretext.

Pretext is shown by demonstrating "weakness, implausibilities, inconsistencies, incoherence, or contradictions" in the stated reasons such that a reasonable factfinder could find the reason unbelievable and thus discriminatory. *Rivera v. City and County of Denver*, 365 F.3d 912 at 925. In his attempt to show pretext, Plaintiff offers testimony from an employee that she once overheard Zulick call another employee a "spick" three years prior to the incident giving rise to this cause of action. In addition to being impermissible hearsay, however, an isolated remark by a non-decision-maker[4] in 2001, however, is insufficient to support Plaintiff's allegation. "Isolated remarks, unrelated to the disputed employment action, are insufficient to demonstrate discriminatory animus." *See Stover v. Martinez*, 382 F.3d 1064, 1077-78 (10th Cir. 2004) (citing *Rea v. Martin Marietta Corp.*, 29 F.3d 1450, 1457 (10th Cir. 1994); *Cone v. Longmont United Hosp. Assoc.*, 14 F.3d 526, 531

---

[3] Incidentally, it does not appear that Defendants' belief was mistaken, given the admitted fact that subsequent to Plaintiff filing this lawsuit, the boxes from the smoke detectors at issue were seen on the premises of a home Plaintiff was constructing for himself. *See* Mot., Exs. M,N.

[4] Zulick investigated the matter and reported the information to Christiansen, who made the decision. *See* Mot., Ex. J.

9

(10th Cir. 1994)). Plaintiff has failed to show the required nexus between the alleged comment and the disputed employment decision. *See Rea*, 29 F.3d at 1457.

Plaintiff also contends that he was treated differently than two non-Hispanic employees similarly situated to him, creating an inference of discrimination. This argument must also fail, for despite Plaintiff's exhaustive briefing on an alleged romantic affair between Defendant Zulick and another employee, Natalie Dyal, Plaintiff attempts to compare apples and oranges. Misappropriation of company property combined with dishonesty cannot be reasonably likened to an alleged, consensual affair for purposes of establishing disparate treatment. *See, e.g., MacKenzie v. City & County of Denver*, 414 F.3d 1266, 1277 (10th Cir. 2005). Further, assuming, *arguendo,* the employee behaviors were similar enough in type for productive comparison, Chugach was within its discretion to determine misappropriation and dishonesty to be more severe than an alleged romantic affair.

It is clear as a matter of law that Plaintiff's employment ended for legitimate, nondiscriminatory reasons. Plaintiff has not established constructive discharge as an element of his prima facie case and offers insufficient evidence tending to show that Defendants' proffered reasons were pretextual. In sum, the Court finds no genuine issue of fact in need of resolution because there is inadequate evidence to support Plaintiff's theory that the company labored under any anti-Hispanic bias. Thus, Plaintiff's NMHRA claim is dismissed.

**IV.     Conclusion**

For the foregoing reasons, the Court finds no genuine issue of material fact in need of resolution on any of Plaintiff's claims. Therefore, summary judgment disposition is proper on all claims in Plaintiff's Complaint in favor of Defendants.

Wherefore,

**IT IS ORDERED** that *Defendants' Motion for Summary Judgment and Memorandum in Support* ("Motion"), filed October 31, 2005 (*Doc. 22*), is GRANTED and Plaintiff's Complaint is DISMISSED in its entirety with prejudice.

Dated February 7, 2006.

_____
SENIOR UNITED STATES DISTRICT JUDGE

Attorneys for Plaintiff:

>  Rachel Higgins, Esq.
>  John Duhigg, Esq.
>  Albuquerque, N.M.

Attorneys for Defendants:

>  Jeffrey L. Lowry, Esq.
>  Aaron Viets, Esq.
>  Rodey, Dickason, Sloan, Akin, & Robb, P.A.
>  Albuquerque, N.M.